UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MARTINE THOMAS, as Parent and Natural Guardian
of A.T., and MARTINE THOMAS, Individually,

                               Plaintiff,

-against-                                        1:26-cv-0200-GHW

MELISSA AVILES-RAMOS, in her official capacity
as Chancellor of the NEW YORK CITY
DEPARTMENT OF EDUCATION, and the NEW
YORK CITY DEPARTMENT OF EDUCATION,

                               Defendants.
------------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT

Jeffrey ARlen Spinner Esq.
Liberty & Freedom Legal Group Ltd.
*Attorneys for Plaintiff*
105 East 34th Street #190
New York, NY 10016
(646) 850-5035
jeff@pabilaw.org

1

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES……………………………………………………………… i

PRELIMINARY STATEMENT……………………………………………………………1

LEGAL STANDARD……………………………………………………………………1

STANDARD OF REVIEW………………………………………………………………3

STATEMENT OF FACTS………………………………………………………………..3

ARGUMENT……………………………………………………………………………..7

I.  THIS COURT SHOULD REVERSE SRO KROLAK'S FINDING THAT DOE
PROVIDED A FAPE……………………………..……………………………………7

    A.  DEFERENCE SHOULD NOT BE GIVEN TO SRO KROLAK'S
DECISION …………………………………………………………………8

    B.  THE SRO'S FINDING THAT THE DOE PROVIDED FAPE WAS
CONTRARY TO THE EVIDENCE ...………………………………….…..9

        1.  The DOE Failed To Recommended Appropriate Assistive
Technology for This Non-verbal Student to Communicate……………9

        2.  DOE Presented No Evidence of How ITS IEP—Taken in Total
From the iBRAIN Plan—Could Be Implemented without an
Extended School Day …………………………………………………11

        3.  The DOE Failed To Recommend Necessary Transportation
Recommendations or Evaluate A.T. Regarding the Requested
Accommodations …………………………………………………..13

II.  iBRAIN WAS AN APPROPRIATE UNILATERAL PLACEMENT …………………15

III.  EQUITIES FAVOR PLAINTIFF FOR REIMBURSEMENT FOR THE 2024-2025
ESY…………………………………………………………………………………17

    A.  THERE IS NO EVIDENCE THAT THE PLAINTIFF'S CONDUCT
SUPPORTS ANY REDUCTION IN REIMBURSEMENT …………………17

    B.  THE CONDUCT OF THE DOE MUST BE CONSIDERED IN THE
ANALYSIS OF PRONG III OF THE *BURLINGTON/CARTER* TEST ..……19

1

IV.    DOE IS RESPONSIBLE FOR DIRECTLY FUNDING THE CONTRACTUAL
       AMOUNTS DUE AND OWING, INCLUDING LATE FEES AND INTEREST……20

       A.    CONTRACTUAL LATE FEES AND INTEREST ARE RECOVERABLE
             AS A MATTER OF LAW …………………………………………………...20

       B.    ENFORCING CONTRACTUAL LATE FEES AND INTEREST
             UPHOLDS PUBLIC POLICY…………………………………………….22

CONCLUSION…………………………………………………………………………23

VERIFICATION OF WORD COUNT. …………………………………………………..24

**Table of Authorities**

**Cases**                                                                                            *Pages*

*A.P. v. N.Y.C. Dep't of Educ.*,
  2024 WL 763386 (2d Cir. Feb. 26, 2024)                                                                18

*Bd. of Educ. v. C.S.*,
  990 F.3d 152 (2d Cir. 2021)                                                                            3

*Bd. of Educ. v. Rowley*,
  458 U.S. 157 (1982)                                                                                 1, 15

*C.F. ex rel. R.F. v. N.Y. City Dep't of Educ.*,
  746 F.3d 68 (2d Cir. 2014)                                                                             3

*C.U. v. New York City Dep't of Educ.*,
  23 F. Supp. 3d 210 (S.D.N.Y. 2014)                                                                    19

*Ferreira v. Aviles-Ramos*,
  120 F.4th 323 (2d Cir. 2024)                                                                       17, 18

*Florence Cnty. Sch. Dist. Four v. Carter*,
  510 U.S. 7 (1993)                                                                         2, 15, 21, 22

*Forest Grove Sch. Dist. v. T.A.*,
  557 U.S. 230 (2009)                                                                                   22

*Frank G. v. Bd. of Educ.*,
  459 F.3d 356 (2d Cir. 2006)                                                                           15

*G.L. v. Ligonier Valley Sch. Dist. Auth.*,
  802 F.3d 601 (3d Cir. 2015)                                                                           22

*Gagliardo v. Arlington Cent. Sch. Dist.*,
  489 F.3d 105 (2d Cir. 2007)                                                                           17

*GB v. New York City Dep't of Educ.*,
  145 F. Supp. 3d 230 (S.D.N.Y. 2015)                                                                   19

*Gregory K. v. Longview Sch. Dist.*,
  811 F.2d 1307 (9th Cir. 1987)                                                                          8

*J.M. v. N.Y. City Dep't of Educ.*,
  171 F. Supp. 3d 236 (S.D.N.Y. 2016)                                                                    3

*Jennifer D. ex rel. Travis D. v. N.Y. City Dep't of Educ.*,
  550 F. Supp. 2d 420 (S.D.N.Y. 2008)                                                                    3

1

*Mr. A. v. Greenwich Bd. of Educ.,*  15-cv-00203 (CSH),
    2016 U.S. Dist. LEXIS 94431 (D. Conn. July 21, 2016)                                20

*Mrs. B. v. Milford Bd. of Educ.*,
    103 F.3d 1114 (2d Cir. 1997)                                                         12

*Peterson v. Cnty. Sch. Bd. of Hanover Cnty., Va.*,
    641 F. Supp. 2d 499 (E.D. Va. 2009)                                                 21

*R.E. v. N.Y. City Dep't of Educ.*,
    694 F.3d 167 (2d Cir. 2012)                                                        2, 8

*S.Y. v. New York City Dep't of Educ.*,
    210 F. Supp. 3d 556 (S.D.N.Y. 2016)                                                  8

*Sch. Comm. of Burlington v. Dep't of Educ.*,
    471 U.S. 359 (1985)                                                                  2

*Schied v. Bd. of Educ.,* No. 05-CV-6255,
    2006 U.S. Dist. LEXIS 74332 (W.D.N.Y. Oct. 11, 2006)                                 9

*Shelby S. v. Conroe Indep. Sch. Dist.*,
    454 F.3d 450 (5th Cir. 2006)                                                        14

*Simchick v. Fairfax Cnty. Sch. Bd.*,
    553 F.3d 315 (4th Cir. 2009)                                                        21

*T.K. v. New York City Department of Education*,
    810 F.3d 869 (2d Cir. 2016)                                                         19

*T.M. v. Cornwall Cent. Sch. Dist.*,
    752 F.3d 145 (2d Cir. 2014)                                                          2

*Town of Burlington v. Dep't of Educ. for Com. of Mass.*,
    736 F.2d 773 (1st Cir. 1984)                                                        20

*Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*,
    550 U.S. 516 (2007)                                                                  2

*Z.A.R. v. City of N.Y.*,
    No. 19-cv-2615, 2022 U.S. Dist. LEXIS 176421 (E.D.N.Y. Sep. 27, 2022)               19

**Statutes**

20 U.S.C.  § 1412(a)(1)(A)                                                               1

20 U.S.C. § 1400                                                                         1

20 U.S.C. § 1401                                                                         2

20 U.S.C. § 1415                                                                   1, 2, 3, 8

3

N.Y. Educ. Law § 4404                                                        9, 12, 13

NYCCR 8 § 200.5                                                                    2

## PRELIMINARY STATEMENT

Plaintiff MARTINE THOMAS ("Plaintiff," or "Parent"), respectfully submits this Memorandum of Law in support of her Motion for Summary Judgment. This action seeks to enforce Plaintiff's and A.T.'s, ("A.T." or "Student") rights under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Specifically, this action seeks to reverse State Review Officer ("SRO") Decision No. 25–113, issued on September 12, 2025, dismissing Plaintiff's claims for the 2024-2025 extended school year ("ESY") finding that Defendants ("DOE" or "Defendants") provided A.T. with a free appropriate public education ("FAPE") for the school year. Further, Plaintiff seeks to reverse the SRO's decision failing to find that the private placement was appropriate and that equities favored Plaintiff for relief.

For the reasons explained below, the Court should enter summary judgment in favor of Plaintiff and enter an order (1) holding that the SRO erred in dismissing Plaintiff's appeal; (2) finding that the DOE denied A.T. a FAPE for the 2024-2025 ESY, (3) finding that the unilateral placement at iBRAIN for the 2024-2025 ESY was appropriate, and equities favor Plaintiff for full reimbursement of the placement, including tuition and transportation, for the 2024-2025 ESY; and (4) declaring that Plaintiff is the prevailing party and entitled to attorneys' fees and costs under 20 U.S.C. § 1415(i)(3)(B)(i).

## LEGAL STANDARD

The IDEA requires school districts to provide FAPE to all students with disabilities. 20 U.S.C. § 1412(a)(1)(A). FAPE is offered to a student when the board of education complies with the IDEA's procedural requirements and the Individual Education Plan ("IEP") developed by its Committee on Special Education ("CSE") through the IDEA's procedures is reasonably calculated to enable the student to receive educational benefits. *Bd. of Educ. v. Rowley*, 458 U.S. 157, 206-

1

07 (1982). School districts must comply with the checklist of procedures for developing a student's IEP. *R.E. v. N.Y. City Dep't of Educ.*, 694 F.3d 167, 190-91 (2d Cir. 2012).

School districts must develop an IEP for each child with a disability to provide FAPE tailored to their unique needs. 20 U.S.C. § 1401(a)(20). IDEA's procedural safeguards ensure that each student with a disability receives FAPE. 20 U.S.C. § 1415(a). IDEA's procedural safeguards allow the student and/or parent to challenge that IEP. See 20 U.S.C. § 1415; *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525 (2007). This process begins with the DPC.

After an IHO is assigned, a preliminary conference occurs where parents discuss their concerns with the school district to reach an agreement. 20 U.S.C. § 1415(f)(1)(B)(i)(IV). The district has thirty days to resolve the issue. 20 U.S.C. § 1415(f)(1)(B)(ii). If the district does not do so, parents may request an impartial DPH. 20 U.S.C. § 1415(f)(1)(A). New York has a two-tier administrative process for hearings at the IHO level and appeals at the SRO level. NYCCR 8 § 200.5(i)(1). After the DPH, an IHO issues a Findings of Fact and Decision ("FOFD") whether the student received FAPE from the DOE. If FAPE was not provided, the IHO determines whether the parent's unilateral placement was appropriate and whether equitable considerations require a reduction in the parent's relief. A school district must pay for a private placement if the school district's proposed IEP was inappropriate, the program selected by the parent was appropriate, and the equities support the parent's claim. These three factors, or "prongs," comprise the *Burlington/Carter* test. *T.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014); *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15, 16 (1993)); *see also Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 372–74 (1985).

An aggrieved party may appeal to the State's Department of Education's Office of State Review. Upon briefing, an SRO issues a decision. A party aggrieved by the SRO's decision can

2

appeal to the state or Federal Court. 20 U.S.C. § 1415(i)(2)(A).

"Summary judgment appears to be the most pragmatic procedural mechanism in the Federal Rules for resolving IDEA actions" but, unlike the standard for motions for summary judgment in other civil actions, "[t]he inquiry…is not directed to discerning whether there are disputed issues of fact, but whether the administrative record, together with any additional evidence, establishes that there has been compliance with IDEA's processes and that the child's educational needs have been appropriately addressed." *Jennifer D. ex rel. Travis D. v. N.Y. City Dep't of Educ.*, 550 F. Supp. 2d 420, 429 (S.D.N.Y. 2008).  A motion for summary judgment in an IDEA case in the Second Circuit serves as a procedural mechanism, rather than a traditional summary judgment motion.

## STANDARD OF REVIEW

The Court's review involves an independent examination of the record and may include additional evidence if requested by a party. 20 U.S.C.  § 1415(i)(2)(C).  The decision is based on the preponderance of the evidence, and the Court is required to grant appropriate relief as determined by this standard. 20 U.S.C. § 1415; *Bd. of Educ. v. C.S.*, 990 F.3d 152 (2d Cir. 2021). Disputed issues of fact do not defeat the motion.  *J.M. v. N.Y. City Dep't of Educ.*, 171 F. Supp. 3d 236 (S.D.N.Y. 2016). "The role of the federal courts in reviewing state education decisions under the IDEA is circumscribed." *C.F. ex rel. R.F. v. N.Y. City Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014).  The standard of review "requires a more critical appraisal of the agency determination than clear-error review but nevertheless falls well short of complete de novo review." *Id.* (quoting *M.H. v. N.Y. City Dep't of Educ.*, 685 F.3d 217, 244 (2d Cir. 2012)).

## STATEMENT OF FACTS

### A.T.'s Educational Needs

A.T. was sixteen years old at the time of the creation of the June 5, 2024 IEP ("June 2024 IEP") for the 2024–2025 SY. [R. 607]. A.T. is diagnosed with Dandy-Walker syndrome, a congenital condition that affects the development of the cerebellum, cognition, language, memory, attention, reasoning, abstract thinking, judgment, movement and balance. [R. 641]. These global impairments and developmental delays, and deficits adversely impact his educational abilities and performance. [R 668]. A.T. is non-verbal and requires the use of gestures, sign language, and assistive technology to communicate. [R. 726]. He can ambulate with assistance for very short distances but generally relies on a wheelchair for mobility. [R. 727, 735]. A.T. requires support during all school-based activities, in all environments to aid in positioning, transfers, sustained attention, access to assistive technology, navigating environments, completion of activities of daily living, and safety. [R. 727]. Due to the severity of A.T.'s physical and cognitive impairments, he requires intensive interventions, specifically designed instruction, modifications and adaptions to have access to curriculum. [R. 738]. The DOE has concluded that due to the severity of his impairments, a general education classroom would be physically dangerous to him, socially and cognitively overwhelming, and academically inappropriate. [R. 738]. A.T. has been attending iBRAIN since September 2022. [R. 677].

On June 5, 2024, a Committee on Special Education ("CSE") convened to develop the June 2024 IEP for the Student for the 2024–2025 SY. [R. 722]. Due to a family death, the CSE meeting was reschedule several times and, ultimately, Plaintiff was unable to attend, but Plaintiff's attorney attended, as well as iBRAIN's Deputy of Special Education, A.T.'s teacher and therapists. [R. 677, 762].

The CSE recommended a program placing the Student in a special class at a District 75 school in an 8:1+1 classroom, pending placement at a NYSED approved non-public day school

program. [R. 754]. The CSE recommended individual sessions of related services: occupational therapy ("OT") four times a week in sixty-minute sessions; physical therapy ("PT") five times a week in sixty-minute sessions; speech/language therapy ("SLT") four times a week in sixty-minute sessions. [*Id.*]. The CSE recommended SLT once a week in a group session, assistive technology ("AT") services once a month, and parent counseling and training once a month. [*Id.*]. A 1:1 paraprofessional was also recommended for ambulation, feeding, and safety. [*Id.*]. A dynamic display speech generating device was also recommended for daily use. [*Id.*]. The Student was also recommended for special transportation accommodations, including a lift bus and a 1:1 transportation professional. [R. 758].

While the CSE incorporated the bulk of iBRAIN's IEP, including, *inter alia*, the present levels of performance, management needs, goals, 8:1:1 class ratio, and related services mandates, the CSE failed to recommend music therapy, air condition and limited time for transportation, and appropriate assistive technology equipment. [R. 754, 758-760]. The IEP proposed to implement the June 2024 IEP in a District 75 public school pending placement at a NYSED approved non-public day school program. [*Id.*]. Although Plaintiff was unable to attend the CSE meeting, her counsel attended and raised concerns about the lack of music therapy, the lack of air conditioning and limited travel time accommodations for transportation, and the lack of an extended day to accommodate the robust schedule of related services. [R. 677, 760].

On June 14, 2024, Plaintiff sent a Ten-Day Notice ("TDN") describing her concerns with the DOE's June 2024 IEP for the 2024-2025 ESY. [R. 148-149]. Plaintiff remained willing to consider an appropriate DOE program. [*Id.*]. Plaintiff advised of her intention to unilaterally placed A.T. at iBRAIN for the 2024–2025 ESY. [*Id.*].

Having no response from the DOE and with the new school year starting in less than two

weeks, Plaintiff entered into a transportation contract with Sisters Travel and Transportation Services on June 15, 2024. [R. 174-180].  On June 19, 2024, Plaintiff entered into an Enrollment Contract with iBRAIN for the 2024-2025 SY. [R. 167-172].

Only days before the start of the new school year, on June 25, 2024, DOE informed Plaintiff of its proposed school location for the 2024-2025 SY starting in September would be a NYSED approved non-public school, pending availability, and in the interim at 75K811 Connie Lekas School. [R. 763-770].

**<u>Administrative Proceedings</u>**

On July 2, 2024, Plaintiff filed a DPC stating in pertinent part that: (1) the DOE did not offer A.T. a FAPE for the 2024–2025 extended SY; (2) the unilateral placement or continued placement of their child at iBRAIN was appropriate; and (3) equitable considerations favored an award of full tuition payment directly to the educational program/placement and the related service providers. [R. 143-146].  In addition, Plaintiff's DPC requested a proper resolution meeting and an order requiring the DOE to fund A.T.'s educational program/placement during the pendency of the due process proceedings relative to the DPC for the 2024–2025 SY, as required by 20 U.S.C. § 1415(j). [R. 137-138].

A due process hearing was held over two sessions, and IHO Powell finally issued a FOFD on January 6, 2025. [R. 37-51].  IHO Powell found that the DOE met its burden on Prong I of the *Burlington-Carter* test and the IEP provided a FAPE. [R. 51].  The IHO made no findings as to the appropriateness of iBRAIN or the consideration of the equities for reimbursement. [*Id.*].

Plaintiff appealed the FOFD. [R. 91-100].  Plaintiff argued that the IHO erred in finding DOE proved its burden to provide FAPE based on the IEP's failure to recommend appropriate assistive technology, appropriate accommodations for transportation, an extended school day, and

music therapy. [R. 94-96]. Additionally, Plaintiff asserted that the DOE denied a FAPE based on its procedural violation in providing a late School Location Letter. [R. 98]. Plaintiff argued the IHO erroneously declined to make a finding of the appropriateness of iBRAIN and that the equities favored Plaintiff for relief. [R. 98-99].

In SRO Decision No. 25–113, dated September 12, 2025, SRO Krolak found the IHO properly dismissed the claims for the 2024-2025 ESY as the DOE did not deny A.T FAPE. [R. 24]. SRO Krolak did not make any findings as to Prongs II or III of the *Burlington-Carter* test. [*Id.*].

Pursuant to the Annual Enrollment Contract between Parents and iBRAIN for the 2024-2025 SY ("iBRAIN contract"), the total amount of tuition owed for the 2024-2025 SY is $314,826.60. [R. 168]. Pursuant to the School Transportation Annual Service Agreement between Parents and Sisters Travel and Transportation Services, LLC for the 2024-2025 SY (the "Sisters contract"), the total amount owed for special transportation for the 2024-2025 SY is $147,403.00. [R. 175]. Notably, the iBRAIN contract requires quarterly tuition payments, the final payment being due on January 2, 2025. [R. 168]. Similarly, the Sisters' contract provides for three installment payments, the final payment being due on January 1, 2025. [R. 175]. Plaintiff brought an action to enforce A.T.'s right to statutory pendency funding at iBRAIN with specialized transportation in *Thomas v. Aviles-Ramos*, 26-cv-5138, and the DOE ultimately funded the costs of A.T.'s pendency program with payments for tuition and transportation in February and May of 2026. Accordingly, due to the DOE's delay in payment, Plaintiff has incurred substantial interest and late fees.

## **ARGUMENT**

In cases brought under the IDEA for reimbursement for unilateral placement, DOE carries

the burden of proof, "including the burden of persuasion and the burden of production." N.Y. Educ. Law § 4404(1). DOE must provide evidence for each element of the case "except that a parent...shall have the burden of persuasion and burden of production on the appropriateness of [the unilateral] placement." N.Y. Educ. Law § 4404(1).

## I. THIS COURT SHOULD REVERSE SRO KROLAK'S FINDING THAT DOE PROVIDED A FAPE

### A. DEFERENCE SHOULD NOT BE GIVEN TO SRO KROLAK'S DECISION

This Court should reverse SRO Krolak's Decision affirming the denial of any relief to Plaintiff for the 2024-2025 ESY. This Court should not defer to the SRO. It is respectfully submitted that this Court should reverse SRO Krolak's decision that Plaintiff be denied any and all relief, because the SRO's finding of FAPE was not based on the evidence and was not thorough, careful, and well-reasoned. The Second Circuit has held that while the SRO decisions are to be given "due weight" by district courts, the decisions are still subject to independent judicial review. *Mrs. B. v. Milford Bd. of Educ.*, 103 F.3d 1114 (2d Cir. 1997).

The quality of the SRO opinion determines the deference it is owed. *S.Y. v. New York City Dep't of Educ.*, 210 F. Supp. 3d 556, 566 (S.D.N.Y. 2016); see also *R.E. v. N.Y.C. Dept of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012) (citing *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998)). Courts may consider whether the decision being reviewed is well-reasoned and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court. *S.Y.*, 210 F. Supp. 3d at 566; see *R.E.*, 694 F.3d at 189. "While [d]eference is particularly appropriate when the state officer's review has been thorough and careful[,] … [courts] do not simply rubber stamp administrative decisions." *R.E.*, 694 F.3d at 184. Moreover, "[w]hile the decisions of the state educational agencies should be considered, how much deference to give state educational agencies . . . is a matter for the discretion of the courts." *Gregory K. v.*

*Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987). The Court is then "'free to accept or reject the findings in part or in whole.'" *Schied v. Bd. of Educ.*, No. 05-CV-6255CJS(P), 2006 U.S. Dist. LEXIS 74332 at *10 (W.D.N.Y. Oct. 11, 2006) (quoting *Gregory K.*, 811 F.2d at 1311 (quoting *Town of Burlington v. Department of Education*, 736 F.2d 773, 792 (1st Cir. 1984), 471 U.S. 359 (1985))).

**B.    THE SRO'S FINDING THAT THE DOE PROVIDED FAPE WAS CONTRARY TO THE EVIDENCE**

Under New York law, the school district bears the burden of proof, including the burden of persuasion, to establish that its proposed IEP provided the child a FAPE. N.Y. Educ. Law § 4404(1)(c).**1**

**.    The DOE Failed To Recommended Appropriate Assistive Technology for This Non-verbal Student to Communicate.**

It is undisputed that the DOE's IEP is entirely based on the Education Plan drafted by the student's private placement. [R. 9, 607-664, 722-769]. The DOE admitted that it did not conduct any additional evaluations other than an updated social history and one classroom observation. [R. 9]. The Student's present levels of performance, management needs, measurable annual goals, and progress performance in the IEP are identical to the information provided in the iBRAIN Education Plan ("iBRAIN Plan"). Notwithstanding wholly relying the iBRAIN's robust evaluations and Plan, the DOE then determined that certain necessary assistive device technologies were not required.

The SRO erred in finding that the recommended AT was sufficient to provide FAPE. [R. 23]. Specifically, the SRO erroneously concluded that the AT recommendation was appropriate because "the parent has not cited any regulation or law that requires a particular brand or model of speech generating device to be identified in the student's IEP." [*Id.*]. The SRO's conclusion

9

conflates the brand or model of device with the type of device, and in doing so, the SRO ignored the ample evidence that A.T. required more sophisticated technology to access his education and make progress. The record was replete with references to A.T.'s need for more high tech speech-generating devices than the one he was previously using which the DOE recommended he continue to use. [R. 619, 754]. For example, the iBRAIN Plan noted that A.T. had been using his personal AT equipment, a dynamic display speech generating device (PRC Accent 1000 device with LAMP Words for Life Software) since 2018, but that more recently A.T. has begun using an iPad with communication software which has resulted in his willingness to use and in his *increased use* of the device over his prior device. [R. 619]. Further, it was noted that A.T. used increased icons on the new communication device to create novel phrases which he is not motivated to do with his prior AT device. [*Id.*]. Similarly, it is noted that A.T. "has been more open and willing to communicate when utilizing the iPad with Proloquo2go software" than his prior device. [R. 620]. Further, it was noted that the new device and software should be considered because A.T. "has been increasingly resistant to utilizing his current PRC with LAMP Words for Life." [R. 622]. It was noted that the iPad with the new software "will allow [A.T.] to better communicate in phrases and maintain conversations during his daily activities." [*Id.*]. Finally, it was noted that with this iPad and new software, "[A.T.] has been observed to communicate longer utterances and with less behavioral outbursts related to communication breakdowns." [*Id.*]. The DOE's IEP recognized that A.T. required a "high tech speech generating device" for social development. [R. 738].

Despite all the evidence, the DOE's IEP recommended A.T.'s old dynamic display speech generating device, which A.T. had been using since 2018, while ignoring the evidence that A.T. was unmotivated to use the device and needed more sophisticated software accessible through an iPad to increase his communication. The SRO's conclusion that the DOE's recommended AT was

10

simply a different "brand" of AT ignored the ample evidence that the recommended device was not the same technology that iBRAIN recommended based on robust observations and evaluations. The DOE's did not conduct its own evaluations of A.T.'s AT needs and failed to recommend the appropriate devices to enable A.T. make progress in his communication. Because the SRO's decision was not well-reasoned and ignored the ample evidence to the contrary, this Court owes the decision no deference and should reverse the SRO's finding that the DOE provided FAPE.

2.      **DOE Presented No Evidence of How its IEP—Taken in Total From the iBRAIN Plan—Could Be Implemented without an Extended School Day**

It is undisputed that the DOE's IEP is entirely based on the iBRAIN's evaluations and Plan, except for refusing services the DOE does not provide. [R. 9, 607-664, 722-769]. The DOE admitted that it did not conduct any additional evaluations other than an updated social history and one classroom observation. [R. 9]. The Student's present levels of performance, management needs, measurable annual goals, and progress performance in the IEP are identical to the information provided in the iBRAIN Plan. Furthermore, DOE's recommendations of the class size, need for a 1:1 paraprofessional, and frequency and duration of occupational therapy, physical therapy, speech language therapy, and AT services are lifted verbatim from the recommendations contained in the iBRAIN education plan. [R. 646-655, 657-660, 754]. The DOE relied entirely on the extensive documentation from the iBRAIN Plan and the iBRAIN staff who attended the CSE in developing its recommendations on the IEP. [R. 47]. However, iBRAIN's Education Plan was developed with the understanding that the program would be implemented with an extended school day. [R. 607-664].

DOE failed to present any evidence to demonstrate how its recommended robust schedule of related services per week in addition to 35 academic periods, and five periods of adaptive

11

physical education, could have been implemented within the DOE's standard school day. The SRO improperly surmised that the even if all of the services had to be delivered as push-in basis into the 8:1:1 classroom, "the hearing record does not indicate that the district was factually capable (sic) of implementing the student's recommended program, as written, within the regular school day." [R. 32]. The SRO's conclusion was not based on the evidence or well-reasoned, considering the DOE's repeated and multiple mandates in the IEP that A.T. required quite, distraction-free environments for his therapies. The SRO's conclusion was not supported by any evidence provided by the DOE.

The SRO's conclusion completely ignores that DOE lifted its recommendations entirely from iBRAIN's Plan, which was designed to be implemented during an extended school day (8:30 a.m. – 5:00 p.m.), without offering any proof of how it could be tailored to the DOE's shortened public school day. Furthermore, the DOE offered no evidence of how it could incorporate the on average 3+ hours of related services per school day into the 5.5 hours of academic class time in light of DOE's own acknowledgment in its IEP that A.T. required that therapies be provided in quiet and distraction-free environments to prevent A.T. from becoming dysregulated. [R. 736-738]. For example, DOE noted in its IEP, A.T. requires "a quiet, non-distracting environment for successful comprehension and communication. Noise reduction" [R. 738.], and that instruction should be provided in a room with "less stimulus from visual and auditory distractions." [*Id.*]. Likewise, the DOE noted that A.T. requires "a quiet, distraction-free environment (private room), with limited overlapping visual and auditory stimuli for successful introduction of gross motor activity to ensure successful learning," and that A.T. "is more attentive, engaging and motivated when his physical therapy sessions are in a room with less distractions." [*Id.*]. Further, the DOE's IEP specifically provides that "[A.T.] requires daily push-in ***and pull-out*** physical therapy

12

sessions." [*Id*.].  The DOE noted that, related to his therapies, A.T. "benefits from participate in a quiet and distraction-free environment" and "often shows behavioral changes and dysregulation due to over stimulation and loud noises from the surrounding environment." [R. 736].  The SRO's conclusion that DOE provided FAPE was neither thorough nor well-reasoned and should be afforded no deference.

Because the DOE failed to carry its burden of proof that it could implement the IEP as written, which was designed to be implemented in a school day of 8.5 hours, in a 5.5-hour school day while maintaining the quiet and non-distracting environment needed to keep A.T. regulated and capable of learning, the SRO's decision that DOE provided FAPE must be reversed.  Plaintiff is entitled to summary judgment that DOE failed to provide A.T. a FAPE for the 2024-2025 SY.

### 3. The DOE Failed To Recommend Necessary Transportation Recommendations or Evaluate A.T. Regarding the Requested Accommodations

The school district bears the burden of proof, including the burden of persuasion, to establish that its proposed IEP provided the child a FAPE. N.Y. Educ. Law § 4404(1)(c). Notwithstanding the burden of proof, the SRO erred by placing the burden on the Plaintiff to establish appropriate transportation accommodations.

At the CSE meeting, Plaintiff made known her concerns about the DOE's failure to recommend specialized transportation with air conditioning and limited travel time. [R. 677, 760]. The iBRAIN's Plan, which the DOE relied heavily upon to develop its IEP, indicated the need for these accommodations. [R. 662].  In his decision, SRO Krolak acknowledged the IHO's decision that pendency placement for A.T. for the 2024-2025 SY was based on SRO Krolak's Decision 24-175, which specifically found that the contracted specialized transportation, ***including air***

13

*conditioning and limited travel time*, was appropriate.[1] [R. 12]. Further, SRO Krolak noted that the testimony of the DOE's representative testified that air conditioning was not recommended because "neither the parent advocate nor iBrain staff requested it at the June 2024 CSE meeting, and it would need to be specifically requested." [R. 26]. The SRO further cited to the testimony of the DOE's representative that the CSE did not recommend limited travel time because "it did not receive the proper paperwork for consideration." [R. 27]. The evidence does not support the SRO's conclusion.

The SRO's conclusion that the DOE's failure to recommend these accommodations was not a procedural denial of FAPE because "at the time of the June 2024 CSE, there was no information that the recommended transportation accommodations would be inappropriate." [R. 28]. Because the SRO's decision is belied by the facts in the record and referenced by the SRO, the decision is contrary to the evidence and must be reversed. The SRO's decision improperly relieved the DOE from its duty to evaluated the evidence it had and, if there was any question, conduct the necessary medical assessments in order to provide appropriate special education programming to a student with a disability. *See Shelby S. v. Conroe Indep. Sch. Dist.*, 454 F.3d 450, 454 (5th Cir. 2006). As a result, the SRO erred in placing the burden of proof on the Plaintiff to prove the necessity of the requested accommodation.

Contrary to the SRO's conclusion, the DOE had ample evidence prior to the June IEP that A.T. required these accommodations. The DOE was aware that A.T. required these same accommodations for the 2023-2024 SY. [SRO Decision 24-175 at page 4]. The DOE was aware that if the Plaintiff disagreed with the June 2024 IEP, it would be statutorily required to implement the pendency placement for the 2024-2025 SY per the last agreed upon placement, which was

---

[1] 24-175.pdf at page 4.

14

SRO Decision 24-175.  Prior to the CSE meeting, the DOE was aware that the iBRAIN Education Plan recommended the accommodations. [R. 662].  The DOE was aware that Plaintiff requested these accommodations at the CSE meeting. [R. 677, 760].  Any one of these pieces of information was sufficient at the time of the CSE to put the DOE on notice that, at a minimum, it should conduct an evaluation regarding these accommodations.  Instead, the DOE simply ignored the information and placed the health of a non-verbal student, who is confirmed at all times to a wheelchair, at risk.

Because the SRO's decision was not well-reasoned and ignored the ample evidence to the contrary, this Court owes the decision no deference and should reverse the SRO's finding that the DOE provided FAPE.

## II.   iBRAIN WAS AN APPROPRIATE UNILATERAL PLACEMENT

Under Prong II of the *Burlington/Carter* test, a parent must only show that their unilateral placement was reasonably calculated to enable the child to receive educational benefits. *Florence County v. Carter*, 510 U.S. 7 (1993).   Here, the IHO and the SRO did not address Prong II of the *Burlington/Carter* test.  The undisputed evidence establishes that iBRAIN was appropriate.

The "same criteria and considerations" under Prong I also govern the reasonableness of the parent's school choice under Prong II.  *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 364 (2d Cir. 2006).  The appropriateness of the parent's choice must "turn[] on whether the placement . . . is 'reasonably calculated to enable the child to receive educational benefits.'" *Board of Education v. Rowley*, 458 U.S. 157, 207 (1982).  This Court has further clarified that the parent's burden is to establish that the private placement is "likely to produce progress, not regression." *Frank G.*, 459 F.3d at 364 (quoting *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 133 (2d Cir. 1998).  The appropriateness of a private placement is based on indicators that the placement provides "educational instruction specially designed to meet the unique needs of a [disabled] child,

15

supported by such services as are necessary to permit the child to benefit from instruction." *Rowley*, 458 U.S. at 188-89. The district court "must examine the record for 'objective evidence' that indicates 'whether the child is likely to make progress or regress under the proposed plan.'" *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 839 (2d Cir. 2014).

iBRAIN is a private and highly specialized special education program in New York City created for children who suffer from acquired brain injuries or brain-based disorders. [R. 680]. iBRAIN has an extended 12-month school year calendar and offers all services during its extended school day, which runs from 8:30 a.m. to 5:00 p.m. [*Id*.]. iBRAIN is an interdisciplinary program for school-aged students, many of whom are non-verbal and non-ambulatory. [*Id*.]. Most students have a disability classification of Traumatic Brain Injury and have management needs that are either intensive or highly intensive and which require a significant degree or high degree of individualized attention and intervention. [*Id*.]. iBRAIN provides its students with IEPs geared towards improving functioning skills appropriate to their cognitive, physical, and developmental levels, through a collaborative and multidisciplinary approach which incorporates the best practices from medical, clinical, and educational fields. [*Id*.]. iBRAIN offers its students a wide variety of related services, including occupational therapy, physical therapy, speech therapy, assistive technology services, music therapy, and parent counseling and training. [R. 681].

iBRAIN conducted thorough evaluations of A.T. and prepared a robust, comprehensive Plan specifically designed to meet his unique needs and reasonably calculated to enable progress. [R. 607-664]. The Plan contains measurable annual goals and recommends a regimen of related services to meet those goals. [*Id*]. The DOE heavily and almost exclusively relied upon the iBRAIN's evaluations, progress, recommendations in created an IEP that essentially adopted all aspects of the iBRAIN Plan except for critical recommendations such as AT equipment,

16

transportation accommodations, music therapy, and an extended school day to accommodate the robust related services. [R.722-769].

iBRAIN's quarterly progress reports for A.T. documented the services provided. [R. 772-814]. The DOE's own IEP documented the ample progress across domains that A.T. made at iBRAIN: "academically making strides" [R. 726]; "steady progress in language progression and is projected to meet goals" [R. 731]; "made expected progress towards his goals" [R.755]; "continuous progress [in expressive and receptive language] is expected to continue" [R.731]; and "steady and significant progress towards physical therapy goals." [R. 736].

The ample evidence demonstrates that iBRAIN was appropriate for A.T. with an education plan specifically designed to meet his unique needs, supported by services necessary to permit him to benefit from instruction. The undisputed evidence establishes that the iBRAIN program was likely to and did produce progress. While evidence of progress is not necessary to show that a placement was appropriate, it may be considered as one factor. *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007).

This Court should find that the preponderance of the evidence demonstrates that iBRAIN was an appropriate placement.

## III.    EQUITIES FAVOR PLAINTIFF FOR REIMBURSEMENT FOR THE 2024-2025 ESY

### A.    THERE IS NO EVIDENCE THAT THE PLAINTIFF'S CONDUCT SUPPORTS ANY REDUCTION IN REIMBURSEMENT

District courts must independently review the administrative record and determine the balance of the equities for Prong III of the test based on a preponderance of the evidence. *Ferreira v. Aviles-Ramos*, 120 F.4th 323, 332 (2d Cir. 2024). The relief granted must "be appropriate in light of the purpose of the [IDEA]," which is "to 'ensure that all children with disabilities have

available to them [FAPE] that emphasizes special education and related services designed to meet their unique needs.'" *Id.* at 330 (quoting *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 244 (2009). Reimbursement may be reduced or denied if a parent fails to raise the appropriateness of an IEP in a timely manner, fails to make their child available for evaluation by the district, or upon a finding of unreasonableness with respect to the actions taken by the parents. See *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 461 (2d Cir. 2014) (factors relevant to equitable considerations: whether the withdrawal of the student from public school was justified, whether adequate notice was provided, whether the amount of the private school tuition was reasonable, and any fraud or collusion on the part of the parent or private school).

DOE must prove that it provided FAPE under Prong I. If it fails, the parent must prove the unilateral placement was appropriate under Prong II. If the parent prevails under Prong II, she is entitled to reimbursement. Under Prong III, the equities are weighed to determine whether the parent is entitled to full reimbursement or a reduced amount.

District courts must independently review the administrative record—not give deference to the SRO—and determine the balance of the equities based on a preponderance of the evidence. *Ferreira v. Aviles-Ramos*, 120 F.4th 323, 332 (2d Cir. 2024). The entitlement to reimbursement is determined under the first two prongs. *A.P. v. N.Y.C. Dep't of Educ.,* 2024 WL 763386, at *1 (2d Cir. Feb. 26, 2024) (citing *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 246–47 (2009)). "Once parents pass the first two prongs of the *Burlington-Carter* test, the Supreme Court's language in *Forest Grove*, stating that the court retains discretion to 'reduce the amount of a reimbursement award if the equities so warrant,' suggests a presumption of a full reimbursement award." *Id*. at 5.

Here, there is no evidence that Plaintiff impeded the IEP process. DOE did not provide

18

any evidence that the conduct of the Parents contributed or caused to contribute to the failure to recommend the denial of essential services.  The DOE did not request any evaluations of A.T., so there is no evidence that Plaintiff was not cooperative.  Although Plaintiff did not attend the CSE meeting, her absence was based on a death in the family and her attorney attended and actively participated on her behalf. [R. 670, 760].  The Parent's concerns were raised at the CSE meeting. [*Id*.]. Parent sent a timely TDN, dated June 14, 2024. [R. 148-149, 760].  DOE did not provide any evidence that the conduct of the Parent contributed or caused to contribute to the failure to recommend the denial of essential services.

Receiving no response from DOE regarding her concerns, Plaintiff reasonably entered into contracts for the school year, including an enrollment contract with iBRAIN and a transportation agreement with Sisters Transportation.  There is no evidence the Parent engaged in fraud or collusion to generate the tuition or other costs to be charged to DOE or that the costs were unreasonable.

Accordingly, there is no evidence to support any reduction in the reimbursement for Plaintiff's conduct.  Plaintiff is entitled to summary judgment in her favor and requests the Court enter an order directing DOE to pay the late fees and interest owing on the tuition and transportation services pursuant to the terms of the contracts for the 2024-2025 ESY.

**B.    THE CONDUCT OF THE DOE MUST BE CONSIDERED IN THE ANALYSIS OF PRONG III OF THE *BURLINGTON/CARTER* TEST**

Finally, the conduct of the DOE should be considered in the balancing of equities. Courts in the Second Circuit require that both parties' conduct should be considered. *C.U. v. New York City Dep't of Educ.*, 23 F. Supp. 3d 210 (S.D.N.Y. 2014); *Z.A.R. v. City of N.Y.*, No. 19-cv-2615, 2022 U.S. Dist. LEXIS 176421 at *12 (E.D.N.Y. Sep. 27, 2022); *GB v. New York City Dep't of Educ.*, 145 F. Supp. 3d 230, 257 (S.D.N.Y. 2015)(noting that in addition to considering whether

19

the parents' conduct was reasonable, other factors to consider include whether the DOE unreasonably delayed anything and the appropriateness of the DOE's conduct....").  In *T.K. v. New York City Department of Education*, 810 F.3d 869, 879 (2d Cir. 2016), the Second Circuit criticized the IHO and SRO for focusing only on the conduct of the parents. *Cf., Mr. A. v. Greenwich Bd. of Educ.*, 3:15-cv-00203 (CSH), 2016 U.S. Dist. LEXIS 94431, *64 (D. Conn. July 21, 2016) ("In other words, none of Parents' actions had any causal role in the Board's failure to provide a FAPE.").  The conduct of the DOE further supports a finding that the equities weigh wholly in favor of Plaintiff for full reimbursement for the 2024-2025 placement.

Here, the DOE did nothing to conduct independent evaluations of A.T.'s needs before creating an IEP that mirrored the iBRAIN Plan excepting necessary accommodations for AT equipment, transportation, and an extended school day. [R. 607-664; 722-769].  DOE did not reconvene meetings after Plaintiff served the Ten-Day Notice.

The DOE's conduct must be considered in the balancing of the equities.  Here, DOE accepted the bulk of iBRAIN's Plan except necessary accommodations, with absolutely no explanation or investigation.  DOE's conduct was the sole cause of the denial of FAPE. Accordingly, because the equities favor the Plaintiff, reimbursement for the private placement at iBRAIN and the specialized transportation for the 2024-2025 ESY should be ordered and the DOE should be ordered to fund the placement and related services pursuant to the contracts.

IV. **DOE IS RESPONSIBLE FOR DIRECTLY FUNDING THE CONTRACTUAL AMOUNTS DUE AND OWING, INCLUDING LATE FEES AND INTEREST**

   A. **CONTRACTUAL LATE FEES AND INTEREST ARE RECOVERABLE AS A MATTER OF LAW**

Recoverable costs under IDEA are not limited solely to tuition but may include additional financial burdens imposed by a school district's failure to make timely payments.  IDEA's "make-whole" remedy ensures full compensation for expenses incurred because of a school district's

20

failure to provide FAPE, including foreseeable and contractually agreed-upon charges like late fees and interest. See *Town of Burlington v. Dep't of Educ. for Com. of Mass.*, 736 F.2d 773, 788 (1st Cir. 1984), aff'd *sub nom. Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359 (1985) (affirming that reimbursement should cover all costs parents incur in providing appropriate education).  In *JP ex-rel. Peterson v. Cnty. Sch. Bd. of Hanover Cnty., Va.*, 641 F. Supp. 2d 499, 506 (E.D. Va. 2009), the Court determined that the plaintiffs there were entitled to a reasonable interest rate as compensation for tuition payments made with their credit cards, emphasizing that the court has broad discretion to award appropriate relief. *See also M.S. ex-rel. Simchick v. Fairfax Cnty. Sch. Bd.*, 553 F.3d 315, 325 (4th Cir. 2009) (district courts have broad discretion in IDEA awards and such awards should be equitable).

The tuition and transportation service agreements for the 2024–2025 school year expressly outline the fees for late payments. [R. 168, 175].  Given this Court's broad discretion under the IDEA to ensure that parents are not financially penalized for enforcing their child's right to a FAPE, DOE must be held responsible for the late fees and interest directly resulting from its failure to provide a FAPE.

The late fees and interest charged by the service providers are foreseeable, known to DOE, and result from DOE's refusal to provide FAPE.  Late fees and interest impose financial hardships on families, jeopardize students' access to uninterrupted education, and deprive students of *free* and appropriate education.  This Court should intervene to ensure that DOE fulfills its statutory and contractual obligations in a timely manner, as required by law.

Denying Plaintiffs' requests for reimbursement of these late fees and interest would effectively deprive them of the "free" component of a FAPE.  DOE's failure to provide a FAPE has imposed financial hardship on Plaintiff, making her liable for late fees and interest that would

21

not have been incurred had DOE fulfilled its legal obligations in a timely manner. Preventing

parents from recovering these additional costs after the final decision would render any relief

obtained an "empty victory." *See Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*,

510 U.S. 7, 12 (1993).  Recently, in *Mendez v. Aviles-Ramos et al.*, Judge McMahon rejected the

DOE's position that it was not obligated to pay late fees and interest as applied to transportation

late fees. 25-cv-01096-CM, Dkt. No. 45 at *8 n.3 (S.D.N.Y. Oct. 1, 2025). As the Court stated:

> Applying the relevant language from the [final administrative order], the Court finds that DOE must pay for late fees and interest arising from Plaintiff's Transportation Agreement with Sisters Travel. *The reason is that the plaintiff signed a contract to pay those amounts if they were incurred*.

*Id.* at 9. (Emphasis added).

Here, the DOE's failed to provide A.T. with a FAPE, therefore making DOE responsible for

the late fees and interest. *See generally Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247 (2009)

(discussing the broad equitable powers of courts in IDEA cases).  Accordingly, this Court should

follow Judge McMahon's reasoning and ruling in *Mendez* and order DOE to pay late fees and

interest for tuition and transportation, because of its inexcusable delays. *See* 25-cv-01096-CM,

Dkt. No. 45 at *8 n.3 (S.D.N.Y. Oct. 1, 2025).

**B.    ENFORCING CONTRACTUAL LATE FEES AND INTEREST UPHOLDS PUBLIC POLICY**

Enforcing these contractual provisions serves a crucial public policy objective: incentivizing

the DOE to comply in a timely manner with its federal obligations under the IDEA to provide a

FAPE to a student with disabilities.  Here, the DOE was aware of the deficiencies in the June 2024

IEP and failed to take corrective action.  The DOE was on notice at the CSE meeting and with the

TDN and DPC of the deficiencies with the IEP.

If the DOE can continue to delay payments without consequence, there is little incentive to

promptly fulfill its obligations to affected children with disabilities.  Simply put, the DOE's non-

compliance is unacceptable and actionable, and its delays have threatened the Student's attendance at iBRAIN and special transportation services with Sister's Travel and also resulted in significant late fees. See generally *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 620 (3d Cir. 2015) (emphasizing that IDEA aims to prevent school districts from dragging their feet).

Although DOE will certainly argue that enforcement of such late fees would be detrimental to the taxpayers of New York, one of whom has brought this lawsuit, the DOE conveniently overlooks that its own actions are the catalyst of this problem. The DOE can easily prevent any such burden on taxpayers by compliance with its obligations under the IDEA. DOE's attempt to evade accountability for its actions and place blame on these Plaintiff should not be condoned. Summary judgment is warranted in favor of the Plaintiff for the payment of contractual late fees.

## CONCLUSION

For the above reasons, the Plaintiff asks the Court to grant her Motion for Summary Judgment in its entirety, as well as such other, further, and different relief as the Court deems just, proper, and equitable.

Dated: July 22, 2026
New York, NY

Respectfully submitted,
Liberty & Freedom Legal Group
*Attorneys for Plaintiff*

By: */s/ Jeffrey Arlen Spinner*
Jeffrey Arlen Spinner, Esq.
105 East 34th Street #190
New York, NY 10016
(646) 850-5035
jeff@pabilaw.org

23

## <u>VERIFICATION OF WORD COUNT</u>

Pursuant to the Local Rules of the District Court for the Southern District of New York and Judge Gregory H. Woods's Individual Rules on Civil Cases, the undersigned verifies that the word count of this document, excluding those portions exempt therefrom, is 7,410 which is less than 8,750, and the font is Times New Roman 12 point.

Dated: July 22, 2026
      New York, NY

*/s/ Jeffrey Arlen Spinner*
Jeffrey Arlen Spinner Esq.

25